## J. R. Sharp v. H. M. Womack.

No. 6808.   Decided April 15, 1936.
Rehearing overruled May 20, 1936.
(93 S. W., 2d Series, 712.)

*Lennox & Lennox*, of Clarksville, for plaintiff in error.

The court having found that the lands lying between the original south bank of the Red River and the new south bank to the north was not embraced within the field notes of the first deeds from the Lyle and Fryar heirs to the plaintiff Sharp, and the uncontroverted evidence reflected by the instruments themselves that the lands outside the deeds was reserved and not intended to be conveyed with the uplands, the finding and judgment that such lands passed as incident or appurtenant against the plaintiff should not be permitted to stand. Bingham v. McDowell, 69 Texas, 100; Jones v. Johnston, 59 U. S. 150, 15 L. Ed. 323; Balcar v. Lee County Cotton Oil Co., 193 S. W., 1094.

*Tom L. Beauchamp*, of Tyler, and *Moore & Moore*, of Paris, for defendant in error.

Mr. Judge GERMAN of the Commission of Appeals delivered the opinion for the court.

Plaintiff in error, J. R. Sharp, who will be referred to as plaintiff, is owner of three tracts of land in Lamar County. They are referred to and will be designated the "Lyle tract," the "Fryar tract" and the "Nations tract." The Lyle and Fryar tracts are a part of the east L. W. Tinnin Survey, and the Nations tract is out of the J. H. Williams Survey. The Lyle tract was acquired by plaintiff by deed dated May 24, 1924, and the Fryar tract was acquired by deeds dated in January, 1923. The Nations tract was acquired by deed dated January 28, 1930. We have prepared a composite map which we think is approximately correct, so far as illustrative purposes are concerned, and which will be used to make plain our opinion. This map is as follows:

The division line between the Williams Survey and the Tinnin Survey is indicated by letters A and B. For the purpose of this decision we are representing what is referred to in some of the field notes as the "original south bank of Red River" by the lines marked D, E, A and I. The land in controversy in this suit is the land lying between the "original south bank" of Red River and the south bank of the present channel of said river, which is to the north about one mile, and said land is embraced within the lines D, F, H and I.

In May, 1915, there was a tremendous flood in Red River which continued for several days. It appears from the evidence that the waters first cut into the south bank of the river at the north end of the Lyle, Fryar and Nations tracts for a considerable distance, and then shifted to the north, so that when they finally attained their normal condition the channel of the river was approximately one mile to the north, as shown on the map. At the point where the waters had encroached upon the Lyle, Fryar and Nations tracts there was left what is now known as the "cut bank," some fifteen to twenty feet high, and indicated on the map by dotted line K to L. The location of this

cut bank is of course only approximated by us for purpose of illustration.

In 1925 plaintiff Sharp sued defendant in error H. M. Womack, who will be designated herein as defendant, in the District Court of Lamar County in trespass to try title. The number of the suit was 9731. At that time plaintiff had acquired the Lyle and Fryar tracts by deeds calling for the south bank of the Red River and making the river the northern boundary. In suit No. 9731 the land sought to be recovered was described as follows:

"Beginning at the intersection of the E. B. line of the Eastern L. W. Tinnin Survey with the original bank of Red River; Thence S. 60 West with the original bank of Red River about 1100 varas more or less to the intersection of the W. B. line of the Lyle land; Thence North about 1900 varas more or less to the bank of Red River; Thence down Red River with its meanders in an easterly direction about 950 varas more or less to the intersection of the E. B. line of the Eastern L. W. Tinnin Survey; Thence South about 1150 varas to place of beginning, containing 274 acres of land more or less.

"Plaintiff further shows to the court that the above described tract of land is what is commonly known as accreted land and that the same has been added to the lands of this plaintiff by the gradual recission of Red River; that on or about the _____ day of _____, 1908, the north boundary of the lands now owned by plaintiff was Red River, which intersected the E. B. line of the Eastern L. W. Tinnin Survey and the western boundary line of the Lyle land as above described, giving to said lands now owned by plaintiff about 1100 varas front on Red River; that since said above date Red River has gradually receded north from its old bank and all of said land above described is the result of a gradual accretion along the north boundary of the plaintiff's land."

It will be observed that the land sought to be recovered was the land between the original south bank of the Red River and the new south bank to the north and embraced within the lines D, F, G and A.

Defendant in that suit defended on several grounds, and on a trial of the case, at the conclusion of the plaintiff's testimony, the court rendered judgment to the effect that plaintiff take nothing and that defendant recover the title and possession of the land described in the petition. This judgment was dated February 24, 1926. No appeal was prosecuted from that judgment and it became final.

After this judgment was rendered plaintiff Sharp obtained additional deeds from his prior vendors to the Lyle and Fryar tracts, describing not only the land south of the original south bank of the river but also the land between that point and the present channel of the river; and it is upon the title alleged to have been acquired by these deeds that he has sought a recovery of the same land in this suit. The trial court in the present case, which was filed February 4, 1930, rendered judgment against plaintiff and in favor of defendant for the land described in the former judgment, being the land claimed as an accretion to the Lyle and Fryar tracts and embraced within the lines D, F, G and A upon the map. The court held that as to this land the questions of title was res judicata, and the Court of Civil Appeals affirmed the judgment. 73 S. W. (2d) 1058.

■ As to the correctness of the judgment in this particular there can be no doubt. By the Third Report of the Boundary Commissioners appointed by the Supreme Court of the United States in the case of State of Oklahoma v. State of Texas, this land was found to be an accretion attaching to lands in Texas; and this report was confirmed by the Supreme Court in the cause mentioned. 269 U. S., 314, 46 Sup. Ct., 164, 70 L. Ed., 285. Plaintiff in error says, however, that on the former trial he was denied a recovery because the trial court held that his deeds to the Lyle and Fryar tracts did not include this accreted land, and he therefore had a right to subsequently acquire the title and assert it in this suit. We cannot say that the reason why the court denied a recovery was because plaintiff's deeds did not include lands accreted to the lands specifically described in his deeds. However, if that were the reason then such holding was erroneous and should have been corrected by an appeal. We are of the opinion that the prior deeds to plaintiff conveying the Lyle and Fryar tracts to the south bank of the Red River included all lands that had by accretion become attached to the lands described, and he acquired no titles to such accreted lands by reason of the second deeds. In addition to authorities cited by the Court of Civil Appeals we refer to the following: Plummer v. Marshall, 59 Texas Civ. App., 650, 126 S. W., 1162; Doebbeling v. Hall, 310 Mo., 204, 274 S. W., 1049, 41 A. L. R., 382, 2 R. C. L., 235, and 2 Corpus Juris, page 227, section 481.

■ In this case defendant Womack disclaimed as to all of the Lyle and Fryar tracts south of the line "beginning at the intersection of the E. B. line of the eastern L. W. Tinnin Survey with

the original bank of Red River (A on map); thence South 60 West with the original bank of Red River about 1100 varas more or less to the intersection of the W. B. line of the Lyle land" (D on map). The trial court rendered judgment for plaintiff based on this disclaimer. However, in undertaking to fix the boundary between the lands awarded to defendant and the lands awarded to plaintiff under the disclaimer the trial court did so in the following manner.

"And the Court here fixes and determines the boundary line between the land awarded to the plaintiff on defendant's disclaimer and the land hereinabove decreed to the defendant as being the South Cut Bank of the old Channel of Red River as it existed during the year 1915 and prior to the time it changed its channel, and which river after it changed its channel ran more than a mile North of where it ran prior to said change, and which old cut bank, here referred to and made the boundary line between the land awarded to the plaintiff on the defendant's disclaimer and the land described and decreed to the defendant, the Court finds to be a well defined bank of the depth of approximately 20 feet from its top to the bottom."

In the Court of Civil Appeals and in this Court the proposition is submitted that what is referred to as the "cut bank" of the old channel of the river is south some 200 varas to 350 varas from the line "beginning at the intersection of the E. B. line of the eastern L. W. Tinnin Survey with the original bank of Red River; thence south 60 west with the original bank of Red River about 1100 varas more or less to intersection of the W. B. line of the Lyle land." In the Court of Civil Appeals defendant assigned no counter proposition to this proposition. We have searched the record carefully to see if there was sufficient evidence to support a finding that the "cut bank" was the "original south bank" of the Red River, and have been unable to find such evidence. On the contrary, it appears to be undisputed that when the flood of May, 1915, first began it cut into the Lyle, Fryar and Nations tracts a considerable distance, and the south bank of the river was then removed from the point indicated on the map D to I to what is now termed the "cut bank," (K to L) and that each of these tracts lost considerable acreage. Even defendant admitted that the Lyle tract caved off to a considerable extent. It seems to be undisputed that the northwest corner of the Lyle tract was formerly located at a point in a lake which is now some distance north of the "cut bank." We are therefore of the opinion that in establishing the boundary line between the lands awarded to the respective

parties the trial court awarded to defendant in error a part of the land to which he had entered a disclaimer.

It also appears that defendant disclaimed title to all of the Nations tract south of the "old bank of Red River as it existed during the year 1915, and prior to the time it changed its channel during said year." What we have just said above applies to this tract, and it is evident that in awarding defendant in error title to the Nations tract as far south as the "cut bank" the court included certain land to which he had disclaimed title.

■ With reference to the land claimed to be an accretion to the Nations tract (A, G, H and I on Map) plaintiff was denied a recovery and the Court of Civil Appeals affirmed this judgment. Upon this point the Court of Civil Appeals said:

"As to the Nations tract, we are of the opinion that the appellant has failed to make out a case from the evidence adduced on the trial entitling him to recover title to this land in that there is no deed in the record to Nations, the grantor of this tract, to appellant, and without this deed it cannot be determined whether the appellant's grantors owned the accreted lands to such tract, if in fact there were such accretions, a question we deem unnecessary to determine."

In thus holding the court was in error. Upon the trial the parties made the following admission:

"It is admitted that the J. H. Williams land is patented land; and also that the H. M. Womack land is patented land, and that each party has a regular title from the sovereignty of the soil down to all the land in the deeds except that which is involved in the law suit."

As plaintiff had title from the sovereignty of the soil to the Nations tract, he certainly had such title as would entitle him to all accretions properly apportionable to that tract. See authorities above cited. In addition it was clearly shown that Nations had acquired title to his tract by adverse possession and title thus acquired carries with it title to the accretions. 2 Corpus Juris, page 227.

While it is true defendant pleaded title to this land by limitation, yet we are of the opinion that the evidence did not raise an issue of fact as to such title. Evidently the Court of Civil Appeals was of the same opinion, as it placed its decision upon the ground set out above.

■ Judgment cannot be rendered here for plaintiff in error for this tract (A, G, H and I), because there was no sufficient proof as to what land is to be apportioned to the Nations tract as an

accretion. Plaintiff in error appears to have proceeded on the theory that the accretion was to be ascertained by extending the boundary lines of the several tracts due north to an intersection with the river. Defendant in errors appears to have proceeded on the theory that this land was an accertion to his tract out of the Stoneham Survey. We do not think the case was tried upon the proper theory with reference to apportionment of accretions, and we are of the opinion that as to this tract the case should be reversed and remanded for another trial. For a very clear statement concerning the proper method of apportioning accreted lands between adjoining owners we refer to the case of Doebbeling v. Hall, 310 Mo., 204, 274 S. W. 1049, 41 A. L. R., 382. See also Tiffany on Real Property (2d Ed.) Vol. 2, p. 2112, sec. 543.

The rule for apportioning accretions along rivers appears to be very accurately stated in 1 R. C. L., page 245, as follows:

"The rule which has been most frequently adopted as securing an equitable apportionment of accretions among different lot owners along rivers may be stated as follows: Measure the entire river front as it was when the lots were laid out, and note the aggregate number of feet frontage, as well as that of each lot; then measure a line drawn as nearly as may be with the middle thread of the stream opposite the shore line so measured; then divide the thread line into as many equal parts as there are lineal feet in the shore line, giving to each proprietor as many of these parts as his property measures in feet on the shore line; and then complete the division by drawing lines between the points designating the lot or parcel belonging to each proprietor both upon the shore and river lines. This rule is founded upon the obvious consideration already alluded to, that in many cases, lands which border upon navigable rivers derive a great part of their actual value from that circumstance, and from the benefit of the public easement thereby annexed to such lands, and that being wholly deprived of the benefit of that situation would operate as a great hardship and do real injustice to the riparian proprietor, although he should obtain his full proportion of the land measured by the surface. It may require modification, perhaps, under particular circumstances."

In Gould on Waters this rule is stated and the following explanation is given:

"If, for example, the shore line, before the formation of alluvion, was two hundred rods in length, A's share being 150 rods and B's 50, and the new shore line is but 100 rods in

length, then A would take seventy-five rods and B twenty-five rods of that line; and the division of the land would be completed by running a line from the boundary between the parties on the old line to the point thus determined on the new line. If, instead of curving inward towards the land, the course of the shore bends outward, the dividing lines diverge and each proprietor has a correspondingly greater width towards the water than towards the land."

The judgments of the trial court and of the Court of Civil Appeals awarding to defendant the land referred to in suit No. 9731 is affirmed, and in so far as they award judgment to plaintiff in error on the disclaimers filed by defendant in error they are also affirmed. The judgment of both courts establishing the division line between the lands awarded to defendant in error and the lands awarded to plaintiff in error as the "cut bank" is reversed, and the cause is remanded, with instructions to the trial court to establish the division line, as to the Lyle and Fryar tracts, by locating the line "beginning at the intersection of the E. B. line of the eastern L. W. Tinnin Survey with the original bank of the Red River; thence south 60 west with the original bank of Red River about 1100 varas more or less to the intersection of the W. B. line of the Lyle land."

As to the Nations tract the cause is remanded with instructions that the court establish the north line of that tract by locating the "old (south) bank of Red River as it existed during the year 1915 and prior to the time it changed its channel during said year." As to all land which may be shown to be an accretion to the Nations tract, with its north line located as indicated above, the cause is remanded for another trial.

Each of the parties will pay one-half of all costs in the Court of Civil Appeals and in this Court.

Opinion adopted by the Supreme Court April 15, 1936.
Rehearing overruled May 20, 1936.