## WOMACK v. SHARP et al.*

### No. 1857.

Court of Civil Appeals of Texas. Eastland.

Dec. 2, 1938.

Rehearing Denied Jan. 6, 1939.

Moore & Moore, of Paris, and Tom L. Beauchamp, of Tyler, for appellant.

Lennox & Lennox, of Clarksville, and Hutchison & Fisher, of Paris, for appel lees.

GRISSOM, Justice.

In 1925, J. R. Sharp filed suit against H. M. Womack in trespass to try title to the following described tract of land: "Beginning at the intersection of the E.B. line of the Eastern L.W. Tinnin Survey with the original bank of Red River; Thence S. 60 West with the original bank of Red River about 1100 varas more or less to the intersection of the W.B. line of the Lyle land; Thence North about 1900 varas more or less to the bank of Red River; Thence down Red River with its meanders in an easterly direction about 950 varas more or less to the intersection of the E.B. line of the Eastern L.W. Tinnin Survey; Thence south about 1150 varas to place of beginning, containing 274 acres of land more or less."

Sharp, in that petition, in the paragraph immediately following the above description of the land sued for, alleged as follows: "Plaintiff further shows to the court that the above described tract of land is what is commonly known as accreted land and that the same has been added to the lands of this plaintiff by the gradual recession of Red River, *that on or about the —— day of ——, 1908 the north boundary of the lands now owned by plaintiff was Red River which intersected the E. B. line of the Eastern L.W. Tinnin Survey and the western boundary line of the Lyle land as above described,* giving to said lands now owned by plaintiff about 1100 varas front on Red River; *that since said above date Red River has gradually receded north from its old bank and all of said land above described is the result of a gradual accretion along the north boundary of the plaintiff's land.*"

At the conclusion of the trial of that case, judgment was rendered for the defendant Womack awarding Womack the title and possession of the above land described, alleged by plaintiff to have accreted to the Lyle and Fryar tracts since 1908. The land thus awarded to Womack was described in the judgment exactly as in the first paragraph heretofore quoted from the description of said land in plaintiff's petition. There was no appeal from that judgment. Said land is out of the north part of what is known in this record as the Lyle and Fryar tracts.

Thereafter, in 1930, Sharp filed another suit against Womack in trespass to try title to three tracts of land, known in this record as the Lyle, Fryar and Nations tracts. In answer to plaintiff's petition in the 1930 suit, defendant filed a disclaimer as to the Lyle and Fryar tracts, except as to a tract of land included within plaintiff's description of said two tracts. The part of the Lyle and Fryar tracts not disclaimed by the defendant being the land heretofore described and awarded to Womack by the judgment in the 1925 suit. In connection with and in aid of defendant's disclaimer he alleged that the portion of the Lyle and Fryar tracts not disclaimed by defendant, but expressly excepted from his disclaimer, was "out of the north part of said first and second tracts of land [the Lyle and Fryar tracts] as described in plaintiff's said petition, and includes all the land lying south of and between the south bank of Red River, according to its present channel and the old south bank of said River, as shown by the markings of the terrain now existing and as the same existed when the plaintiff J. R. Sharp filed

*Writ of error dismissed — S.W.2d —.

his said suit against this defendant in said cause No. 9731 * * *", hereinbefore referred to as the 1925 suit.

Defendant Womack also disclaimed title to that portion of the Nations tract described in plaintiff's petition "which lies south of the said old bank of Red River, *as it existed during the year 1915 and prior to the time it changed its channel during said year* and which old bank is shown by plain markings of the terrain now existing and as the same existed when the plaintiff purchased said third tract from B. P. Nations * * *."

In the 1930 suit (trial court's docket Number 13,551), the court rendered judgment that plaintiff Sharp "take nothing by his suit, except so much of the three tracts of land described in plaintiff's petition as to which the defendant disclaimed title." It was held that as to the 274 acre tract of land, out of the north portion of the Lyle and Fryar tracts, excepted from the defendant's disclaimer as to the Lyle and Fryar tracts, that the title thereto had been adjudicated by the 1925 suit and judgment for said 274 acre tract was awarded Womack. The portion of the trial court's judgment mentioned in this paragraph was affirmed.

In the 1930 suit, the court awarded Womack "all the land described as the third tract in plaintiff's petition [the Nations tract] * * * lying north of the old high cut bank of Red River as it existed during the year 1915 and prior to the time said River changed its channel during said year and which old bank of said Red River is plainly defined by the markings of the terrain now existing and as the same existed on the 29th day of May, 1929, when the plaintiff purchased said land from B. P. Nations * * *."

The judgment in the 1930 suit fixed and determined the northern boundary of the Nations tract "as being the south cut bank of the old channel of Red River as it existed during the year 1915 and prior to the time it changed its channel."

From said judgment plaintiff Sharp appealed to the Court of Civil Appeals where the judgment was affirmed. See Sharpe v. Womack, 73 S.W.2d 1058. A writ of error was granted by the Supreme Court. See Sharp v. Womack, 127 Tex. 357, 93 S.W. 2d 712. The Supreme Court affirmed that part of the judgment awarding title to the 274 acres off the north end of the Lyle and Fryar tracts sued for by Sharp in the 1925 suit, and there alleged by Sharp to be accretions to the Lyle and Fryar tracts since 1908, to Womack. The judgment in the 1925 suit was held res adjudicata of the title to said tract. The Supreme Court held that the trial court was correct in decreeing title to be in Sharp to the land disclaimed by Womack. That court, in an opinion by Judge German, pointed out the fact that Womack, in the 1930 suit, had disclaimed as to all of the Lyle and Fryar tracts south of the line "beginning at the intersection of the E.B. line of the Eastern L.W. Tinnin Survey with the original bank of Red River; Thence S. 60 West with the original bank of Red River about 1100 varas more or less to the intersection of the W.B. line of the Lyle land" [page 714], and that the trial court had rendered judgment for plaintiff Sharp based on said disclaimer.

The Supreme Court held that the trial court in fixing and determining the boundary line between the land awarded plaintiff and that awarded defendant, out of the Lyle and Fryar tracts, had erred in fixing said division line "as being the South *Cut Bank* of the old Channel of Red River as it existed during the year 1915 and prior to the time it changed its channel." The court said that the evidence did not show that the "cut bank" and the "original south bank" of Red River were the same—that the cut bank along which the boundary line between plaintiff and defendant, as to the Lyle and Fryar tracts, was so fixed was south some 200 varas to 350 varas from the line "beginning at the intersection of the E.B. line of the eastern L.W. Tinnin Survey with the original bank of Red River; thence south 60 west with the original bank of Red River about 1100 varas more or less to intersection of the W.B. line of the Lyle land." (This line was fixed by the plaintiff's pleadings in the 1925 suit and the judgment adopted the description of the land found in the plaintiff's pleadings. It will be remembered that plaintiff there alleged that the land so described, and here for convenience referred to as the 274 acre tract, was alleged by Sharp to be accretions to the Lyle and Fryar tracts since 1908.) The Supreme Court held that fixing the boundary line between plaintiff's land and defendant's land in the Lyle and Fryar tracts at said "cut bank", instead of in the original "south bank" of Red River, had the effect of moving the boundary line too far south,

and that, thereby, the defendant Womack was awarded part of the land out of the Fryar and Lyle tracts which he had disclaimed.

The Supreme Court as illustrative of the contentions of the parties and its opinion and its disposition of the appeal placed in its opinion (93 S.W.2d 712) at page 713, a map of certain land, including the three tracts here in question, which map is, for convenience, set out below:

With reference to its conclusion that the "cut bank" and the "original south bank" of Red River were not shown by that record to be the same, the court said: "On the contrary, it appears to be undisputed that when the flood of May, 1915, first began it cut into the Lyle, Fryar, and Nations tracts a considerable distance, and the south bank of the river was then removed from the point indicated on the map D to I to what is now termed the 'cut bank' (K to L), and that each of these tracts lost considerable acreage."

The Supreme Court further said: "It also appears that defendant disclaimed title to all of the Nations tract south of the 'old bank of Red River as it existed during the year 1915, and prior to the time it changed its channel during said year.' What we have just said * * * applies to this tract, and it is evident that in awarding defendant in error title to the Nations tract as far south as the 'cut bank' the court included certain land to which he had disclaimed title."

The court concluded its opinion as follows:

"The judgments of the trial court and of the Court of Civil Appeals awarding to defendant the land referred to in suit No. 7931 [the 1925 suit] is affirmed, and in so far as they award judgment to plaintiff in error [Sharp] on the disclaimers filed by defendant in error [Womack] they are also affirmed. The judgment of of both courts establishing the division line between the lands awarded to defendant in error and the lands awarded to plaintiff in error as the 'cut bank' is reversed, and the cause is remanded, with instructions to the trial court to establish the division line, as to the Lyle and Fryar tracts, by locating the line 'beginning at the intersection of the E.B. line of the eastern L. W. Tinnin Survey with the original bank of the Red River; thence south 60 west with the original bank of Red River about 1,100 varas more or less to the intersection of the W. B. line of the Lyle land.'

"As to the Nations tract the cause is remanded, with instructions that the court establish the north line of that tract by locating the 'old (south) bank of Red river as it existed during the year 1915 and prior to the time it changed its channel during said year.' As to all land which may be shown to be an accretion to the Nations tract, with its north line located as indicated above, the cause is remanded for another trial."

The court further laid down the rule for the apportionment of accretions among the owners of the different tracts.

It is evident the Supreme Court reversed the judgment with instructions to do three things: (1) To establish the division line between the land owned by the plaintiff and defendant in the Lyle and Fryar tracts, by locating a certain line on the ground, which line was described in said opinion; (2) to establish the northern boundary of the Nations tract by locating "the 'old (south) bank of Red river as it existed during the year 1915 and prior to the time it changed its channel during said year.'" (3) To determine the accretions to the Nations tract after the division and boundary lines were located on the ground as directed.

After the remand of the case the death of plaintiff, J. R. Sharp, was suggested, and his wife and children were substituted as plaintiffs. No question is made as to the substitution, and, for convenience, the parties will be referred to as heretofore.

In an attempt to obey the instructions of the Supreme Court, the trial court, in or-

der to determine the accretions to the Nations tract, appointed surveyors to make certain measurements. The surveyors were directed to begin at the northeast corner of the Nations tract "on the south bank of the old Red River as it was in the year 1915 before its change in course." They were then directed to follow the south bank of the old river up stream with its meanderings past the Nations, Fryar, Lyle and other lands and "on to the place where the old channel was changed in the year 1915 and then follow the south bank of the new channel down to a point due north of the place of beginning," etc. The court also appointed a surveyor to survey and mark a line "beginning at the intersection of the E.B. line of the eastern L.W. Tinnin Survey with the original south bank of Red River *as it ran in the year 1915 before its change* and run thence south 60 degrees west about 1100 varas more or less to the intersection of the W.B. line of the Lyle land. Said survey will also locate and mark the north boundary line of a tract of land known as the Nations land by locating and marking the old south bank of Red River *as it was prior to the change of the river in 1915",* etc.

The surveyors made their report showing they first located the northeast corner of the eastern L.W. Tinnin Survey and the northwest corner of the J. H. Williams Survey (the Lyle and Fryar tracts being out of the eastern Tinnin Survey and the Nations tract being out of the Williams Survey) by going to the southeast corner of the eastern L.W. Tinnin Survey, which is also the southwest corner of the J. H. Williams Survey, and which was recited to be a well known corner. The surveyors located on the ground the division line between plaintiff's and defendant's land out of the Lyle and Fryar tracts and the north boundary of the Nations tract by following the field notes in the patents to the Eastern Tinnin and Williams Surveys. The intersection of the E.B. line of the Eastern Tinnin Survey with Red River was thus located as that river ran at the time the field notes in the patents were made, apparently about one hundred years ago; the northern boundary of the Nations tract was likewise fixed and located on the ground. With the boundaries thus determined the accretions to the Nations tract were calculated.

Judgment was entered in accord with said report of the surveyors. From such judgment the defendant, Womack, appealed to the Court of Civil Appeals at Texarkana, and thereafter said cause was, by the Supreme Court, transferred to this court.

The Supreme Court plainly directed that the northern boundary line of the Nations tract be established "by locating the 'old (south) bank of Red river *as it existed during the year 1915 and prior to the time it changed its channel during said year.'"* The trial court instructed the surveyors in exact accord with the instructions of the Supreme Court with reference to this line.

The report of the surveyors upon which, or in accordance with which, the judgment was rendered, shows that the north line of the Nations tract was not fixed or established by locating the place where the south bank of the Red River was in 1915 prior to the flood of that year. On the contrary, the north line of that tract was fixed in the surveyor's report and judgment as it was indicated to be located by the field notes found in the patent to the Eastern Tinnin Survey issued about a hundred years ago. Thus it is shown that the north line of the Nations tract was not fixed as directed by the Supreme Court, nor in accord with the directions given to the surveyors by the trial court. Of course this was error. It is not shown that said line as so fixed was identical or substantially the same as that directed to be fixed. Therefore, the judgment in said respect manifests reversible error.

We think that what has been said with reference to the Nations tract may be said generally as to the division line in the Lyle and Fryar tracts. However, with the record before us, it cannot be as easily and certainly ascertained what was meant by the Supreme Court in instructing the trial court "to establish the division line, as to the Lyle and Fryar tracts by locating the line 'beginning at the intersection of the E.B. line of the East L.W. Tinnin Survey with the original bank of Red River," etc. The division line of the Lyle and Fryar tracts was fixed by locating a line beginning at the intersection of the E.B. line of the east Tinnin Survey with the bank of the Red River as that river was located about a hundred years ago. Did the Supreme Court intend for said division line to be fixed by locating the line beginning at the intersection of the E.B. line of the Eastern Tinnin Survey with the bank of Red River as the E.B. line of said survey

intersected the south bank of Red River about one hundred years ago, or in 1915, or in 1908? We do not know what the record before the Supreme Court may have shown with reference to this question. We find neither pleadings nor evidence in this record indicating that this line was to be fixed with reference to the location of Red River in 1915. Nor do we construe the opinion of the Supreme Court as directing the division line on the Lyle and Fryar tracts as the river was then located. It does definitely direct fixing the north boundary of the Nations tract with reference to the location of Red River in 1915. This was in accord with the pleadings as to the northern boundary of the Nations tract.

We agree with appellant that since "Red River is a stream subject to sudden rises and occasional disastrous overflows, and on account of the alluvial nature of the soil through which it courses, it is subject to * * * (occasional) marked changes in its channel * * * (and that) it is therefore inconceivable that the Supreme Court * * * intended to instruct the District Court to fix" the division line across the Lyle and Fryar tracts at the intersection of the E.B. line of the Eastern Tinnin Survey with Red River as it ran about a hundred years ago.

We must assume that the location of the river at such intersection was intended to be fixed as of the date fixed by the pleadings and where the history of this litigation discloses it was intended, to-wit, in 1908. The surveyors' report and the judgment located said division line in the Lyle and Fryar tracts at the intersection of said E. B. line with Red River as the patents indicated the river ran about a hundred years ago. The trial court ordered it established with reference to the location of the river in 1915. It was not then fixed as directed by the trial court; we think it was not fixed as directed by the Supreme Court.

The Supreme Court in its opinion set out at length the description of the land sought to be recovered by plaintiff Sharp in the 1925 suit and which was awarded by the judgment in that case to Womack. That court further quoted in full the paragraph immediately following the description of the 274 acre tract in plaintiff's petition, wherein said land was alleged to be accretions to the Lyle and Fryar tracts since 1908.

Plaintiff in cause No. 9731, filed in 1925, alleged that said 274 acre tract consisted of accretions to the Lyle and Fryar tracts; that in "1908 the north boundary line of the land now owned by plaintiff was Red River, which intersected the E.B. line of the Eastern L.W. Tinnin Survey and the west boundary line of the Lyle land as above described, giving to said lands now owned by plaintiffs 1100 varas front on Red River; that since said above date Red River has gradually receded north from its old bank and all of said land above described is the result of a gradual accretion along the north boundary of the plaintiff's land."

We think it evident from such allegations that Sharp was contending that said 274 acre tract (across the south end of which the Supreme Court directed the division line be established by locating the intersection of the E.B. line of said Tinnin Survey with Red River) had accreted to the Lyle and Fryar tracts since 1908.

Such accretions since 1908 to the Lyle and Fryar tracts, so described by plaintiff Sharp, were by the judgment in the 1925 suit, and by the judgment in the 1930 suit, awarded to defendant Womack. If the Supreme Court intended to direct that such division line be fixed by locating the line beginning at the intersection of the E.B. line of the Eastern Tinnin Survey with the bank of Red River as it existed in 1915, prior to the flood of that year, then we assume that the record before the Supreme Court showed that at said point the south boundary line of Red River was the same in 1908 as in 1915. Otherwise, we must assume that the Supreme Court, by quoting at length the allegations of Sharp in his 1925 petition, to the effect that the 274 acre tract consisted of accretions to the Lyle and Fryar tracts since 1908, intended in fixing said division line for the trial court to establish such line by locating the line "beginning at the intersection of the E.B. line of the Eastern Tinnin Survey with the" south bank of Red River as its south bank at that point was located in 1908, after the flood of that year.

We conclude that the judgment must be reversed in order that the trial court may comply with the directions of the Supreme Court (1) By fixing the division line in the Lyle and Fryar tracts as above indicated. The intersection of the E.B. line of the Eastern Tinnin Survey with Red River

will be located on the south bank of Red River as it existed in 1908 after the flood of that year. (2) So that the north line of the Nations tract may be established "by locating the 'old (south) bank of Red river as it existed during the year 1915 and prior to the time it changed its channel during said year.'" (3) And, also, so that the accretions to the Nations tract may be computed and apportioned in accordance with the method set out in the opinion of our Supreme Court, after the division line of the Fryar and Lyle tracts and the northern boundary of the Nations tract are so ascertained, fixed and located on the ground.·

The foregoing conclusions make unnecessary a discussion of plaintiff's cross-assignments of error. The record is not such as to authorize us to render judgment for plaintiff for rents and damages. All plaintiff's cross-assignments have been considered and are overruled. (Italics in the opinion are ours.)

The judgment is reversed and the cause remanded.