**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Lela DENBY et al., Defendants-Appellees.**

**No. 74–1440.**

United States Court of Appeals, Fifth Circuit.

Nov. 12, 1975.

Rehearing and Rehearing En Banc Denied Dec. 19, 1975.

Roby Hadden, U. S. Atty., Nancy L. James, Asst. U. S. Atty., Tyler, Tex., Lawrence E. Shearer, App. Section, Carl Strass, Atty., Wallace H. Johnson, U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Bill F. Griffin, Jr., Charles C. Dickerson, Center, Tex., for defendants-appellees.

Appeal from the United States District Court for the Eastern District of Texas.

Before GEWIN and SIMPSON, Circuit Judges, and NICHOLS,* Associate Judge.

SIMPSON, Circuit Judge:

The dispute underlying this appeal involves the title to a triangular parcel of land comprising 9.365 acres located in Shelby County, Texas, in or adjacent to the Sabine National Forest. The defendants-appellees, Lela Denby, et al. (hereinafter sometimes referred to collectively as "Denby" or "the Denbys") enclosed the disputed parcel with a wire fence in 1968. The government objected to this and asserted that the parcel was public land located within the boundaries of the National Forest. In an endeavor to reclaim the land, the government instituted a trespass to try title suit in the district court,[1] jurisdiction being asserted under Title 28, U.S.C., Section 1345.[2] A jury trial resulted in a verdict in favor of Denby.[3] The trial court denied the

---

* Of the United States Court of Claims, sitting by designation.

1. Trespass to try title is a statutory action under Texas law, Vernon's Ann.Civ.Stat., art. 7364 (1960), and is the accepted method for resolving title disputes in Texas. See generally 56 Tex.Jur.2d, Trespass to Try Title (1964). Jury trial was requested by the Denbys.

2. Section 1345 provides:

Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

3. The case was submitted to the jury under special issues pursuant to Rule 49(a), F.R. Civ.P. The questions submitted to the jury and the jury's answers were as follows:

**VERDICT OF THE JURY**
**SPECIAL ISSUE NO. 1**

Do you find from a preponderance of the evidence that the plaintiff, and those under which it claims, either in person or through a tenant or agent, have held peaceable and adverse possession of the land involved in this suit, claiming under a regular chain of title from the Republic of Texas for any period of three (3) consecutive years, prior to the institution of this suit? Answer "Yes" or "No".
ANSWER: __No__

**SPECIAL ISSUE NO. 2**

Do you find from a preponderance of the evidence that the plaintiff, and those under which it claims, either in person or through a tenant or agent, have held peaceable and adverse possession of the land involved in this suit, and paying taxes thereon before becoming delinquent, and claiming under a deed or deeds duly filed for record in Shelby County, for any period of five (5) consecutive years, prior to the institution of this suit? Answer "Yes" or "No".
ANSWER: __No__

**SPECIAL ISSUE NO. 3**

Do you find from a preponderance of the evidence that the plaintiff, and those under which it claims, either in person or through a tenant or agent, have held peaceable and adverse possession of the land involved in this suit, cultivating, using or enjoying the same,

government's motion for an instructed verdict, as well as subsequent motions for entry of judgment n. o. v. and for new trial. Judgment was entered for the Denbys in accordance with these rulings, and the government took the instant appeal. We reverse for entry of a judgment for the United States.

The 9.365 acre triangular parcel in dispute is located in southeast Texas, Shelby County, near the Toledo Bend Reservoir, which forms a portion of the boundary between Texas and Louisiana. The government asserts that the disputed parcel was included in a 1613 acre tract which it purchased by warranty deed from the trustees of Pickering Lumber Company in 1935. The appellees contend that the property was part of a 21 acre parcel they purchased from T. W. and Johnnie Lynch in 1944. Both the government and the Denbys claim under chains of title running from a common grantor, Benjamin Parker, as Executor of the Estate of Daniel Parker, deceased. As shown by the map below the conflict reduces to a boundary line dispute, although the district court refused a government request that the litigation be so characterized. The government asserts that the boundary line between the Sabine National Forest and the Denbys' land is along the line running from corner (16) to corner (17). The Denbys assert that the boundary is along the line running from corner (16) to corner (18). The precise issue[4] before the jury below was the location of the southeast border of the government's land in the vicinity of corners (16), (17)

for any period of ten (10) consecutive years, prior to the institution of this suit.?
Answer "Yes" or "No".
ANSWER: __No__

SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that the plaintiff, and those under which it claims, either in person or through a tenant or agent, have held peaceable and adverse possession of the land involved in this suit, under a claim of right, in good faith, and under a deed or other instrument duly recorded in Shelby County, purporting to convey such lands, for any period of twenty-five (25) consecutive years prior to the institution of this suit?
Answer "Yes" or "No".
ANSWER: __No__

SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that plaintiff, and those under which it claims, either in person or through a tenant or agent, had prior possession to the defendants or those under whom they claim of the land bounded by lines running from corners designated as "16", "17", and "18" on the map J–1, introduced in evidence?
Answer "Yes" or "No".
ANSWER: __No__

You are instructed that with regard to Special Issue No. 5 that possession may be either actual possession or constructive possession. The term actual possession means that one is in possession of land when he is in occupation thereof with the intention, actually realized, of excluding occupation by others. The term constructive possession means that one claims the right of exclusive occupation, and no person is in occupation opposing his claim.

If you have answered the foregoing Special Issue No. 5 "No" and only in such event then answer the following Special Issue.

SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that the boundary line between the land in controversy claimed by plaintiff and that claimed by defendants beginning at a corner designated "16" on the map "J–1", introduced in evidence, runs from "16" to the corner designated as "17" on said map?
Answer "Yes" or "No".
ANSWER: __No__

If you have answered the foregoing Special Issue No. 6 "No" and only in such event, then answer the following Special Issue.

SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that the the boundary line between the land in controversy claimed by plaintiff and that claimed by defendants beginning at a corner designated "16" on the map "J–1", introduced in evidence, runs from "16" to the corner designated at "18" on said map?
Answer "Yes" or "No".
ANSWER: __Yes__

The map references in questions 5, 6 and 7 are to corners indicated on a map of the property in dispute, reproduced *infra.*

4. The government also claimed title by adverse possession under the Texas three, five, ten, and twenty-five year adverse possession statutes. Our conclusion that the government was entitled to judgment on the basis of its record title renders it unnecessary for us to discuss the adverse possession questions, submitted to and answered by the jury under Special Issues No. 1, No. 2, No. 3 and No. 4. (Note 3, supra).

and (18), which, in turn, depended on the question whether the southeast corner of this border lies at corner (17) or at corner (18).

FIGURE 1- Based upon
BENJAMIN PARKER SURVEY of DECEMBER, 1838
(area in dispute, 9.365 acres, is shaded)

NUMBERS AT CORNERS CORRESPOND TO ORIGINAL SURVEY OF 1838; NUMBERS IN ( ) ARE NEW NUMBERS ASSIGNED DURING RESURVEY OF LAND IN 1934 PRIOR TO PURCHASE OF LAND BY GOVERNMENT

(not to scale- disputed area is shown disproportionately large)

As is customary in suits involving title to realty, we look to the substantive law of Texas for aid in resolving this dispute. *United States v. Williams,* 5 Cir. 1971, 441 F.2d 637, 643. Under Texas law, the plaintiff in a trespass to try title suit has the burden of proving good title in himself to the disputed land. *Mize v. Wood County,* Tex. Civ.App.1970, 460 S.W.2d 152, 154 (No writ history). The plaintiff's proof must establish the strength of his own title, and the plaintiff may not prevail by proving simply the weakness of the defendant's title. *Ibid.* Where both the plaintiff and the defendant in a trespass to try title suit claim title from a common grantor, as is the case here, the plaintiff must only demonstrate good title coming from that common grantor. *Ibid.* See generally, Annot. 5 A.L.R.3d 375 (1966).

The Denbys and the government trace their chains of title to a common remote grantor. The disputed tract of land was originally surveyed in December 1838 by Benjamin Parker, who received the original patent from the Republic of Texas on December 11, 1841. Benjamin Parker in 1842 deeded lands including this parcel and surrounding land to his father Daniel Parker. Daniel Parker died soon thereafter. The deeds of the property giving rise both to the Denby's chain of title and to the Government's chain of title were executed by Benjamin Parker as Executor of Daniel Parker's Estate.

The original Benjamin Parker survey of December 1838 referenced two corners which are relevant to our review of the proceedings below. As our map indicates, corner no. 6, Parker's southeast corner, was common with the southwest corner of the adjoining L. T. Wilburn survey of August 1838. Benjamin Parker's corner no. 7 is described in the survey as lying a distance of 1670 varas[5] from corner no. 6 in a northwesterly direction. The corner is more particularly described as being located by a stake from which: (1) A black oak four inches in diameter bears north 60 degrees west 7 varas and (2) A pine four inches in diameter bears north 70 degrees east 2.6 varas. If, as the government contends, the corner of its property lies at corner (17) and not at corner (18), then one would expect the description of bearing trees at corner (17) to differ from those described at corner 7 of the original Parker survey. This proves to be the case.

The first deed out of the Benjamin Parker survey in the government's chain of title is a deed to George P. Raines of 309½ acres conveyed in 1882. The relevant descriptions in that deed begin at the northwest corner of the Fowler Roberts parcel, designated as (A) in Figure 1. From corner (A) the deed to Raines calls for a line running south 63 degrees east past Roberts' northeast corner, which is also described as being one of the original corners of the Benjamin Parker survey, 140 varas to J. W. Wilburn's southwest corner, which is described as located by a stake and bearing trees as follows: (1) A hickory (2) An oak marked "X". This description of corner (17) is identical with the description of the southwest corner of the J. W. Wilburn parcel of 140 acres out of which the Denby's chain of title comes. In the deed to J. W. Wilburn, the southwest corner is described as being located by a stake, a hickory and an oak marked "X". In addition, it is noteworthy that the southwest corner of the J. W. Wilburn parcel lies at a distance of approximately 1530 varas northwest of corner no. 6 of the original Parker survey. This is in contrast to the 1670 varas called for as the distance between corners 6 and 7 in the original Parker Survey.

The next deed in the government's chain of title is from Mrs. M. E. Parker, the widow of George P. Raines, to Will A. Pickering in 1902. In pertinent part, the descriptions in that deed called for a

---

5. A vara is a unit of length of Spanish and Portuguese origin used in Latin America and Southwestern United States, varying slightly in length from 31 to 34 inches in various localities. The Texas unit was 33.33 inches in length, according to Webster's Third International Dictionary (Unabridged).

line running south 63 degrees east 140 varas from Parker's original corner no. 7 to a corner described as monumented by a (1) Hickory and (2) An oak marked "X". It will immediately be noted that the description of the bearing trees at this corner are consistent with those described in the original deed from Benjamin Parker to George P. Raines in 1882, and, likewise, inconsistent with those described as lying at corner 7 of the original Benjamin Parker survey of December 1838. The next two deeds in the government's chain of title, one from W. A. Pickering to W. R. Pickering Lumber Company dated 1906, and the second from W. R. Pickering Lumber Company to Pickering Lumber Company dated 1926, reference the descriptions in the deed from Mrs. M. E. Parker to Will A. Pickering of 1902. The final deed in the government's chain of title is from the Trustees of Pickering Lumber Company to the United States dated 1935. In that deed, corner (17) is described merely as being located by (1) Stake, (2) Scribed bearing trees, and (3) An old bearing tree, which was noted as a 14 inch ash.

It appears then, that the deeds in the government's chain of title support the government's claim that its southwest corner in the vicinity of corners (16), (17) and (18) lies at corner (17) and not at corner (18) as the Denbys assert. The government's proof, moreover, did not rest solely on the basis of the deeds in its chain of title. Prior to its purchase of the lands in the vicinity of the parcel whose ownership is contested here, the government undertook a survey of the lands originally contained within the Benjamin Parker survey of December 1838. This 1934 survey is designated as United States Forest Service Survey S1Aa. The government offered testimony of two surveyors as to the location of the southeast corner of the parcel originally deeded by Benjamin Parker to George P. Raines in the vicinity of corners (17) and (18). Government surveyor Hargraves testified at the trial that he had retraced the steps of the surveyor who had run Government Survey S1Aa

for corners (19) through (14). Hargraves testified that he was able to locate the boundary trees described in the 1934 survey for corners (15), (16), (17) and (18), and that the corners were consistent with those asserted by the government as the boundary of its properties.

Surveyor Gardner testified that he had platted the Benjamin Parker survey from the original patent field notes and that Benjamin Parker's corner no. 7 corresponds to corner no. (18) located in the 1934 Forest Service Survey S1Aa. Gardner further traced the location of the corner through the successive deeds in the government's chain of title and testified that the corner of the government's property was indeed located at corner (17) and not at corner (18). Regarding the 14-inch ash referenced in the deed from the Trustees of Pickering Lumber Company to the government in 1935, Gardner noted that a survey in 1919 by Huntington had called for the southwest corner of a portion of the J. W. Wilburn parcel of 140 acres to be described by a stake from which lay a hickory 3 varas south 63 degrees east and also lay a 5-inch post oak and a 7-inch ash both marked "X". Gardner testified that these trees were, as best he could determine, located at the government's claimed corner (17). Gardner further noted that the hickory is the only bearing tree common with the trees called for in the 1838 survey. He noted that the 7-inch ash was added in Huntington's (1919) survey, and stated that he was unclear whether the post oak marked "X" called for in Huntington's survey is the same as the red oak marked "X" called for in the 1838 Benjamin Parker survey.

■ Under Texas law, the location of a boundary line, when in dispute is proven by retracing, as nearly as possible, the footsteps of the original surveyor. *Mortgage Investment Company of El Paso v. Bauer,* Tex.Civ.App.1973, 493 S.W.2d 339, 342, writ ref. n. r. e. In the instant case, the government offered the testimony of two registered surveyors that they had retraced the steps of the original survey-

or and that corner (17), not corner (18), was the southwest corner of the Denby parcel. Since the location of corner (16) was not in dispute, the line running between corner (16) and corner (17) was established as the boundary between the Denby parcel and the government parcel. Examination of the deeds in the government's chain of title bears out this conclusion.

■ No documentary evidence contradicting the government's proof was offered by the Denbys. The appellees' only evidence in support of their claim of ownership was testimony as to their use and possession of the property since their purchase of it in 1944. This evidence, under Texas law, does not meet the government's case since it at most tends to establish the intent of the possessor in a claim by adverse possession.[6] Title by adverse possession, of course, may not be asserted against the sovereign. See, e. g., *United States v. State of California,* 1947, 332 U.S. 19, 40, 67 S.Ct. 1658, 1669, 91 L.Ed. 1889, 1900.

We have reviewed the evidence as a whole in the light of our standard enunciated in *Boeing Company v. Shipman,* 5 Cir. 1969, 411 F.2d 365, 374–375:

"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case— but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n. o. v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question."

■ We conclude that the district court erred in failing to grant the government's motions for directed verdict or for judgment n. o. v. The finding on Special Issues No. 6 and No. 7 locating the disputed boundary between corners (16) and (18), and not between corners (16) and (17), had no evidentiary support and must be rejected.[7] Accordingly, the judgment of the district court based on the jury findings is reversed, with directions that judgment be entered for the United States.

Reversed, with directions.

---

6. *Chenoworth v. Flannery,* 202 S.W.2d 480, 483 (Tex.Civ.App.1947, no writ history); *Nagel v. Kiibler,* 212 S.W.2d 1009 (Tex.Civ.App.1948, writ ref'd n. r. e.); *Radford v. Hill,* 185 S.W.2d 129, 131 (Tex.Civ.App.1945, writ ref'd w. o. m.).

7. As pointed out by the government's brief, the jury's verdict also has the absurd effect of stating that 1,670 varas equals 1,530 varas. The jury determined that the northwest corner of the John W. Wilburn patent is located at corner (18) or corner 7 of the Benjamin Parker patent. When the terms of the two patents are compared it is clear that each survey has a common corner at the southwest corner of the L. T. Wilburn survey (corner 6 of the Benjamin Parker patent and corner 1 of the John W.

Wilburn patent). From that common corner each patent describes the common boundary as running on a line north 63 degrees west. The Benjamin Parker patent calls for a distance of 1,670 varas while the John W. Wilburn patent calls for a distance of 1,530 varas. It is thus impossible, from the clear terms of the two patents, for corner 2 of the John W. Wilburn patent to be located at the same point as corner 7 of the Benjamin Parker patent. But the jury's verdict makes these two corners a common corner, effectively removing corner (17), by a single stroke of the pen, from every deed in the chain of title of the United States after this parcel was created from a part of the Benjamin Parker patent.