532 F.2d 426
 Fred A. CHAPMAN, Jr. and William C. Chapman, Plaintiffs-Appellees,
v.
Norman MOSER and wife, Laura Allen Moser, Defendants-Appellants.
 No. 74-3635.
 United States Court of Appeals,
Fifth Circuit.
 May 27, 1976.
 
 Charles M. Bleil, Howard Waldrop, Texarkana, Tex., Fred A. Lange, Houston, Tex., for defendants-appellants.
 J. D. McLaughlin, Paris, Tex., for plaintiffs-appellees.
 Appeal from the United States District Court for the Eastern District of Texas.
 Before WISDOM, CLARK and RONEY, Circuit Judges.
 RONEY, Circuit Judge:
 
 
 1
 This is a trespass to try title action brought to quiet title to five tracts of Texas ranch land totaling 606.40 acres, including both deeded land and land accreted by the action of the Red River. The property is located at the disputed common boundary between two adjoining ranches. At the outset of litigation both the plaintiffs and the defendants asserted record title, and limitation title whereby each party asserted peaceable adverse possession for the requisite number of years under various statutes of limitation. Vernon's Tex.Rev.Civ.Stats.Ann. Arts. 5507 ff. The action is cognizable under the federal courts' diversity jurisdiction, 28 U.S.C.A. § 1332, the plaintiffs residing in Oklahoma, the defendants in Texas. The case was tried under Texas law before a jury which answered all questions posed in a series of special interrogatories in favor of the plaintiffs. The trial court denied defendants' motion for judgment n. o. v. but awarded one small parcel to the defendants and apportioned a large parcel of accreted land between the parties.[1] The remaining three tracts were awarded to the plaintiffs.
 
 
 2
 Although complicated by a network of legal theories and by alleged errors in the application of relevant law, this appeal is primarily an attack on the jury's findings of fact concerning the plaintiff Chapmans' adverse possession of the disputed tracts of river frontage. We find that the trial court properly applied the Texas law of adverse possession and apportionment, and we conclude that the jury's factual determination that the plaintiffs established their adverse possession to the exclusion of the defendants was supported by substantial evidence under the appropriate standard of review. We therefore affirm the judgment of the district court.
 
 
 3
 In 1917 P. A. and Roxie Chapman, the grandparents of the plaintiffs, purchased property which now comprises both the present Chapman ranch and a portion of the Moser ranch. The land in question is bounded on the north by the Red River, which had changed its course so extensively that P. A. and Roxie Chapman did not have definitive title to the river frontage until 1923 when the Supreme Court settled a boundary dispute between Texas and Oklahoma. State of Oklahoma v. State of Texas, 260 U.S. 606, 43 S.Ct. 221, 67 L.Ed. 428 (1923). See also Oklahoma v. Texas, 269 U.S. 314, 46 S.Ct. 164, 70 L.Ed. 285 (1926). Pursuant to this litigation the United States conducted a survey in 1926, which first identified the Harris Bend Cutoff, the northeasternmost portion of the original Chapman ranch, a body of land lying to the east of a dry, former river run.
 
 
 4
 In 1936 Mrs. Roxie Chapman sold the cutoff to a party named Smalley, and the area then became known as Smalley Island. By 1960 Smalley Island was in the possession of John Farris Johnston, who sold it to the Mosers. The four tracts disputed in this appeal are partially accreted, partially deeded lands located at the tip and to the northwest of Smalley Island.
 
 
 5
 In about 1954 the Chapmans decided to discontinue permanent grazing of the lands involved in this litigation, because the tracts are adjacent to the Red River and had become marshy. They constructed an interior fence, which the Mosers took to be a division fence. The Mosers and Chapmans both, apparently, made sporadic use of the unenclosed marshy lands, hunting the property and occasionally removing timber. In the mid to late 1960's, perhaps 1967, defendants began to clear the disputed lands. In 1970 they repaired and added to the Chapman's interior fence. Bad feelings ensued, leading to the institution of this lawsuit in 1972.
 
 
 6
 In its answers to nine interrogatories, the jury's findings provide the factual basis for establishing title in the plaintiffs on a number of theories recognized under Texas law. The Chapmans' title could be recognized in accordance with the jury's fact finding, by proof of a superior title out of a common source, or by limitation titles. Gray v. Joyce, 485 S.W.2d 311 (Tex.Civ.App.1972); Perkins v. Smith, 476 S.W.2d 902 (Tex.Civ.App.1972); See Land v. Turner, 377 S.W.2d 181 (Sup.Ct.Tex.1964); Hejl v. Wirth, 161 Tex. 609, 343 S.W.2d 226 (1961).
 
 
 7
 In examining the jury's finding on the evidence we will discuss the case by reference to the 25 year limitation title, Vernon's Tex.Rev.Civ.Stats.Ann. Art. 5519, the factual proof of which exacted the most stringent burden of the plaintiffs.
 
 
 8
 At trial the defendants objected to the submission of the plaintiffs' claim of limitation title under the 10 and 25 year statutes of limitations, asserting that the evidence did not warrant submission. Similarly, after the verdict was returned they moved for judgment n. o. v., arguing that the overwhelming weight of the evidence established their title by limitation under the 10 year statute, even though the jury had explicitly held to the contrary on an interrogatory pertaining to this affirmative defense.
 
 
 9
 Since the Mosers moved for judgment n. o. v., we must review the evidence as a whole, in light of our standard of review enunciated in Boeing Co. v. Shipman, 411 F.2d 365, 374-375 (5th Cir. 1969) (en banc):
 
 
 10
 On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence not just that evidence which supports the non-mover's case but in the light and with all reasonable inferences most favorable to the party opposed to the motion. * * * A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n. o. v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question.
 
 
 11
 See also United States v. Denby, 522 F.2d 1358 (5th Cir. 1975). Our review of the record reveals that the evidence warranted submission of the relevant fact issues to the jury.
 
 
 12
 Under Texas law, the plaintiff in a trespass to try title suit has the burden of proving good title in himself to the disputed land. He cannot prevail merely on the weakness of the defendant's title. Mize v. Wood County,460 S.W.2d 152, 154 (Tex.Civ.App.1970); United States v. Denby, supra. Thus, we have reviewed the evidence in this case to determine that the jury could properly conclude that plaintiffs met this burden.
 
 
 13
 It cannot be questioned that from 1917 until 1936 when Smalley Island was sold off, the Chapmans' predecessors in title had exclusive enjoyment and possession of the now disputed lands (except, of course, subsequently accreted property). Live testimony indicated that the then existing river frontage was fenced and continuously pastured through 1954, when the cross fence was built to keep cattle out of marshy areas. Between 1954 and 1967 the property was used only intermittently as a timber source, but evidence of its use was, on the record, sufficient to permit submission to the jury. There is testimony, for example, that portions of an old enclosing fence could be detected as recently as 1967, and testimony shows that the Mosers' immediate predecessor (who did not himself testify) recognized the boundary claimed by the Chapmans, and did not exploit the disputed woodlands or beach area. On our review of this and other evidence in the record in the light and with all reasonable inferences most favorable to the plaintiffs, we conclude that the jury could find adverse possession by the Chapmans and their predecessors for a period of 25 years.
 
 
 14
 Title by limitation under the terms of the 25 year statute, Vernon's Rev.Tex.Civ.Stats.Ann. Art. 5519, is perfected when the following requirements are met: (1) possession is peaceable, (2) and adverse; (3) for a continuous period of 25 years; (4) under a claim of right, (5) in good faith, (6) and pursuant to a deed, or deeds, or any instrument purporting to convey the property. See generally, 2 Tex.Jur.2d §§ 117-120.
 
 
 15
 The first three elements of Art. 5519 pose fact questions for the jury. At the trial the jury was properly instructed as to the meaning of "peaceable" and "adverse" possession, and the interrogatories elicited their determination of these elements, which were determined in the plaintiffs' favor. The evidence warrants the conclusion that between the years 1917 and 1970 the Chapmans peaceably and adversely possessed the disputed lands for a continuous period of at least 25 years.
 
 
 16
 This Court has defined "claim of right" as used in the Texas limitation title statutes as "a bold and open, a downright and persistent claim asserted not furtively by stealth and artifice, but openly, notoriously, unequivocally, adversely and continuously." Delany v. Padgett, 193 F.2d 806, 810 (5th Cir.), cert. denied, 344 U.S. 825, 73 S.Ct. 24, 97 L.Ed. 642 (1952). The jury was properly instructed of the meaning of this term, Interrogatory No. 7 solicited their finding of fact as to this issue, and the jury found in favor of the Chapmans.
 
 
 17
 There is nothing in the record to indicate that the Chapmans' title was obtained by fraud, artifice, or by any intrinsically unfair manner which would indicate lack of good faith. See Unsell v. Federal Land Bank, 138 S.W.2d 305, 309 (C.C.A.Tex.1940). Moreover, the Chapmans' claim is made under a series of deeds, duly recorded, and the evidence indicates that the Chapmans have paid property taxes on at least a portion of the controverted land area. See Vernon's Rev.Tex.Civ.Stats.Ann. Art. 5519a (payment of taxes helps establish prima facie proof of title). The Chapmans have established a chain of title which extends back to the patent from the State of Texas. The patent itself calls for the bank of the Red River as the northern boundary. Defendants' argument that intra-family deeds first converted distance calls into the natural call is not well taken.
 
 
 18
 Once plaintiffs in a trespass to try title action have established title by limitation, it can be defeated only by defendants' showing that they established a subsequent limitation title. See Cook v. Winter, 207 S.W.2d 145 (C.C.A.Tex.1947). The trial court submitted to the jury the question of whether the defendants had peaceable and adverse possession of the four tracts for a period of ten years as required by Art. 5510. The evidence presented a factual issue and the jury's negative answer concludes the matter on review.
 
 
 19
 The determination that the plaintiffs were properly adjudged to have limitation title under the 25 year statute makes it unnecessary to consider defendants' argument that the trial court improperly submitted the three year statute, Art. 5507, to the jury.
 
 
 20
 The defendants argue that the trial court committed error as a matter of law in the manner in which it apportioned one tract of accreted land between the two adjacent landowners. They cite Sharp v. Womack, 127 Tex. 357, 93 S.W.2d 712 (1936), for the proposition that the percentage of present river frontage each landowner receives should be divided in proportion to the original frontage at the time of the patent from the sovereign. This opinion states that apportionment is made on the basis of frontage "when the lots were laid out." Id. at 716. The Harris Bend Cutoff was not separately recognized until the 1926 survey, and that parcel was not laid out until 1936 when Mrs. Chapman sold to Smalley. It is significant that the deed conveyed to Smalley specifically referred to Map No. 18 of the United States survey. We therefore conclude that the district court apportioned the accreted land in accordance with the longstanding procedure for apportioning accreted lands. Johnstonv. Jones, 66 U.S. (1 Black) 209, 17 L.Ed. 117 (1861).
 
 
 21
 Finally we turn to the defendants' argument that certain affidavits admitted into evidence were inadmissible hearsay and constituted reversible error. Defendants urge that the admission of two affidavits, both notarized in 1951 and recorded in the Bowie County, Texas Deed Records in 1952, constituted reversible violations of Texas hearsay evidence rules. One affidavit was signed jointly by two neighboring farmers. The other was signed by a former foreman of the Chapman ranch. We find that these affidavits fell under an exception to the hearsay rule which was recognized in federal courts at the time of the trial.
 
 
 22
 Prior to congressional promulgation of the new Federal Rules of Evidence, federal courts received primary guidance on evidentiary matters from Rules 43 and 44 of the Federal Rules of Civil Procedure. Rule 43(a), which governs our consideration of the contested evidence in this case, makes applicable "rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity . . . ." This Court has noted that the reference to rules of evidence applied in equity suits means that federal courts may turn to common law sources to determine admissibility of evidence. Monarch Insurance Co. of Ohio v. Spach, 281 F.2d 401, 411 (5th Cir. 1960). See also Kilgore v. United States, 467 F.2d 22, 26 (5th Cir. 1972).
 
 
 23
 Defendant complains that the challenged affidavits go so far as to contain detailed field notes on boundary calls. At common law, however, evidence which establishes boundaries of real property enjoys a relaxed application of the hearsay rule. For this proposition we need look no further than Texas jurisprudence. See, e. g. Brateman v. Upper Channel Site Co.,378 S.W.2d 882, 889 (C.C.A.Tex.1964) (" . . . almost any testimony that will help locate the line is admissible."); Reynolds v. Bradford, 233 S.W.2d 464 (C.C.A.Tex.1950); Vogt v. Geyer, 48 S.W. 1100 (C.C.A.Tex.1898) (hearsay about previous ranch foreman's remarks admissible); Tucker v. Smith, 68 Tex. 473, 3 S.W. 671 (1887). See also 5 Wigmore, Evidence § 1563 (Chadbourn rev. 1974).
 
 
 24
 We therefore hold that the trial court did not commit reversible error in admitting into evidence the two disputed affidavits.
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 The plaintiffs did not file a notice of cross appeal as to Tract C, so we lack jurisdiction under Rule 4(a), F.R.A.P. to consider the arguments briefed on this tract. Guiberson Corp. v. Equipment Engineers, Inc., 252 F.2d 431 (5th Cir. 1958); see United States v. Robinson, 361 U.S. 220, 224, 80 S.Ct. 282, 285-86, 4 L.Ed.2d 259, 262-63 (1960) (the timely filing of a notice of appeal is "mandatory and jurisdictional")