

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-12-00363-CV
_____

WELDON JOHNSON, JR., APPELLANT

V.

JENNY ELLIOTT MCDANIEL, TOM JOHNSON ELLIOTT, II
AND MATTHEW EVERETT ELLIOTT, APPELLEES

On Appeal from the 46th District Court
Hardeman County, Texas
Trial Court No. 10466; Honorable Dan Mike Bird, Presiding

May 28, 2014

MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

This is an appeal of a judgment entered following a jury trial in a trespass to try title action concerning approximately 234.2 acres of real property located adjacent to the Red River in Hardeman County, Texas. Appellant, Weldon Johnson, Jr., claimed title to the disputed property by adverse possession and by virtue of common law principles pertaining to accretion of riparian properties. Appellees, Jenny Elliott

McDaniel, Tom Johnson Elliott, II and Matthew Everett Elliott, (the Elliotts) claimed title to the same property by virtue of a chain of title from the sovereignty of the soil to the present. The dispute was tried by way of multiple summary judgment motions resulting in five separate summary judgment orders and a jury trial, ultimately culminating in a *Final Judgment* decreeing the Elliotts to be the rightful title holders of the disputed property.[1] The judgment further awards the Elliotts possession of the disputed property and recovery of damages and attorney's fees from Johnson. By this appeal, Johnson raises seven issues. He asserts the trial court erred by granting (1) the Elliotts' first and (2) second motions for partial summary judgment. He also contends the trial court erred by denying (3) his motion for summary judgment and (4) his motion for a continuance of the hearing on the Elliotts' second motion for partial summary judgment after striking his experts. Johnson further contends the trial court erred by (5) not appointing a surveyor for the purpose of conducting an apportionment survey, (6) denying his motion for judgment notwithstanding the verdict wherein he requested that the trial court set aside the jury findings in favor of the Elliotts on damages and attorney's fees, and (7) denying his motion for remittitur. We affirm.

## BACKGROUND

In November 2008, the Elliotts filed this trespass to try title action concerning a 234 acre tract of land[2] bordered (1) on the west by the north-south boundary line

---

[1] The *Final Judgment* also decrees that, as between Johnson and the Elliotts, Johnson is entitled to title and possession of two triangular-shaped tracts out of the disputed 234.2 acre tract. One tract consists of approximately 5.32 acres and the other tract consists of approximately 145.4 square feet. The Elliotts do not contest that portion of the judgment.

[2] Because the acreage of any tract of land referred to in this opinion is approximate, we will round to the nearest whole number for convenience.

between Section 13 and 14 of the H.E. & W.T. RR. Co. Survey, Abstract No. 1712, Hardeman County, Texas (being the east boundary line of Section 13 and the west boundary line of Section 14 as extended northward to the Red River); (2) on the north and east by the south bank of the Red River; and (3) on the south by acreage undisputedly located in Section 14. The Elliotts claim fee simple title to the disputed property by virtue of their chain of title to Section 14, from the sovereignty of the soil to the present. Johnson claimed the disputed property was accretion property,[3] properly included in Section 13 based on an eastward deviation of north-south boundary line between Sections 13 and 14, which he contended was called for by the river frontage apportionment method set out in *Sharp v. Womack*, 127 Tex. 357, 93 S.W.2d 712, 716 (Tex. 1936).[4] In essence, Johnson contended an equitable apportionment of the river frontage of Sections 13 and 14 required an eastward deviation of their common north-south boundary line, starting at the southwest most corner of the disputed tract and extending northeastward to the Red River, in such a way that the accreted property was part of Section 13, not Section 14. The disputed property is represented by the shaded portion of the accompanying map.



---

[3] "Accretion is 'the process of increasing real estate by the gradual and imperceptible disposition of water or solid material, through the operation of natural causes so as to cause that to become dry land that was once before covered by water.'" *Brainard v. State,* 12 S.W.3d 6, 17 (Tex. 1999), *disapproved on other grounds by Martin v . Amerman,* 133 S.W.3d 262, 267-68 (Tex. 2004).

[4] In *Sharp* the Texas Supreme Court held that accretions to riparian lands should be equitably apportioned to the owners of adjoining lands in proportion to the river frontage of those lands as shown by the original field notes.

By their claims, the Elliotts assert they were dispossessed by Johnson's unlawful entry and possession of the disputed 234 acres. In addition to seeking a declaration of their title, the Elliotts sought possession, lost rents/profits, and attorney's fees.[5] By his third amended answer, in addition to asserting that "all or a portion" of his claim to the disputed property was created by accretion and was, therefore, properly included in Section 13, Johnson further claimed title to a portion of the disputed property by virtue of the three, five, ten and twenty-five-year adverse possession statutes set forth in sections 16.024, 16.025, 16.026, 16.027 and 16.028 of the Texas Civil Practices and Remedies Code.

In December 2009, Johnson filed a motion for summary judgment based solely on the affidavit of Russell Rivers, a surveyor, and his "apportionment survey" (the Rivers Survey) indicating the 234 acres in dispute belonged in Johnson's Section 13. Later the same month, the trial court granted the Elliotts' earlier-filed first motion for partial summary judgment, finding they had established, as a matter of law, a record chain of title to the entirety of Section 14 from the sovereignty of the soil to the present. The trial court's order did not, however, determine whether the disputed property was, in fact, a part of Section 14.[6] Having established their record chain of title, the Elliotts filed a second motion for partial summary judgment asserting the disputed property lies within

---

[5] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.034(a) (West Supp. 2013). *See also Cullins v. Foster*, 171 S.W.3d 521, 536 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

[6] The trial court's order was issued subject to a determination whether Johnson had title to the disputed 234 acres by virtue of the equitable apportionment of accreted property.

Section 14. Johnson filed a countervailing motion for summary judgment asserting the disputed property lies within Section 13.

In July 2010, Johnson filed a motion to continue the scheduled hearing on the Elliotts' second motion for partial summary judgment, requesting time to allow his newly-retained surveyors (Dennis Probst and Steve Gibson) to complete a second apportionment survey. Johnson asserted the newly-retained experts were necessary because his original surveyor, Rivers, had been discredited. Summary judgment evidence established that, on deposition, Rivers "admit[ted] he had failed to comply with reasonable survey standards" and failed to establish a critical survey point on the ground by simply picking his point of beginning at random. The Elliotts responded that, at a hearing in September 2009, Johnson was ordered to designate his experts within ten days. Johnson subsequently designated Rivers but did not make him available for deposition until spring 2010. Then, after a hearing was set in late September on the Elliotts' second partial motion for summary judgment, Johnson moved to continue the hearing to allow him to designate, out-of-time, two new experts for the purpose of obtaining a new apportionment survey. In requesting the continuance, Johnson even agreed with the Elliotts that the survey conducted by Rivers was deficient because it failed to conform to reasonable survey standards. On August 20, the trial court denied Johnson's motion for continuance and struck his untimely designation of new testifying experts.

Despite the trial court's ruling, Johnson filed a supplemental brief in support of his motion for summary judgment, and in response to the Elliotts' second motion for partial summary judgment, attaching affidavits and a new apportionment survey by the stricken

experts. Johnson's supplemental brief also contended a 1999 survey of Section 14, made by Elliotts' experts, shows the "[s]low movement of the Red River northwards account[ing] for accretion acres in th[e] survey as compared with the 1910 location of the river," thereby creating a material issue of fact as to whether the disputed property properly lies within Section 13 or Section 14. Johnson also attached the deposition of Roy Woodman, a surveyor employed by Elliott to survey Section 14. In his deposition, Woodman testified the "[a]pportionment survey performed by Russell Rivers in August 2009 . . . does not represent an apportionment of accretion, if there is such a thing in this area," and that Rivers had deviated from the correct method in "[j]ust about every possible manner." He testified that "[w]ithout knowing where the gradient boundary was prior to [Rivers's] survey, [it was] impossible to tell accretion occurred with the Red River." Woodman opined that the only thing that would change his opinion that an apportionment survey is currently impossible would be if there was a gradient boundary survey showing the Red River's location at the time of the original patent in 1890. He testified that, "[i]n the absence of the location of the gradient boundary at the time of the patent in 1890, there can never be accretion by definition." He opined that "I would say that Mr. Rivers' survey is not an apportionment survey. It purports to be an apportionment survey, but it is not."[7]

---

[7] The parties' designated experts agreed that an apportionment survey must comport with gradient boundary methodology to meet professional standards. *See Brainard,* 12 S.W.3d at 26 (citing *Oklahoma v. Texas,* 260 U.S. 606, 43 S.Ct. 221, 67 L.Ed. 428 (1923), 261 U.S. 340, 43 S.Ct. 376, 67 L.Ed. 687 (1923), 265 U.S. 500, 44 S.Ct. 573, 68 L.Ed. 1121 (1924), *adopted by Motl v. Boyd,* 116 Tex. 82, 286 S.W. 458 (Tex. 1926). "The gradient boundary methodology involves determining two basic factors: the location of the 'key bank,' and the gradient, or rate of fall, of the water." *Brainard*, 12 S.W.3d at 16.

In their *Response to [Johnson's] Motion for Summary Judgment*, the Elliotts moved to strike the Rivers Survey asserting the survey was neither relevant nor reliable.[8] In support, the Elliotts cited evidence that Rivers, as well as their own experts, agreed that to make a valid apportionment survey one had to find the original river bank or a "gradient boundary" as it existed in 1890 when Sections 13 and 14 were originally established and that such a determination was impossible, or "almost impossible." The Elliotts' experts further testified on deposition that Rivers did not use any methodology to determine where the original river banks intersected the current gradient line but instead chose a random point, i.e., where Rivers chose to unload his equipment. The Elliotts' experts also testified the Rivers Survey was flawed because, when he couldn't reach certain areas on the ground, he used GPS co-ordinates taken from an airplane flying along the riverbank and filled in certain parts of his survey using satellite or aerial photographs.[9] The Elliotts also cited statements by Johnson's counsel, made during the hearing on his motion for a continuance of the hearing on Elliotts' second motion for partial summary judgment, that indicated Rivers was Johnson's "currently discredited expert," that Rivers did not "go out on the ground and establish [the west endpoint] on the ground as he should have done" and that "it was that particular failure on his part that [the Elliott's attorney] was able to get him to admit that he failed to comply with reasonable survey standards."

---

[8] The Elliotts also filed a *Motion to Strike Evidence from Defendant's Expert Russell Rivers.*

[9] On deposition, Rivers testified that, to do an apportionment survey, you must find the original bank and establish endpoints to establish where to begin and end the apportionment calculation. He admitted that, to find his endpoints, he "started at the bridge—which that's a good spot to start, because that's where [he] had to unload to get out—[n]ow at the time, not knowing, really, where it all tied back in, that's just where I started, at that time." He confirmed his survey was based in part on GPS shots taken while flying over the area in an airplane to "fill in what voids I might have" where he "couldn't get to it" despite having agreed with counsel that the survey points should be located on the ground.

On February 9, 2012, the trial court sustained the Elliotts' objections to the Rivers Survey and Johnson's designation of two new experts by striking their affidavits and surveys from the summary judgment evidence. The trial court then sustained the Elliotts' objections to Johnson's summary judgment evidence, denied Johnson's motion for summary judgment and granted the Elliotts' second motion for partial summary judgment, thereby determining that the disputed property did lie within Section 14.

At a subsequent pretrial hearing in January 2012 on whether the court should appoint a surveyor for purposes of preparing a new apportionment survey, Johnson contended the trial court should appoint a surveyor because the Elliotts' surveyors admitted there had been accretion along the Red River in Section 14. Because all parties agreed locating the gradient boundary was impossible, Johnson proposed that a court-appointed surveyor use meander calls to determine where the river bank was located in 1890.[10] The trial court determined Johnson bore the burden of proof on whether there was accretion and that the Rivers Survey had been stricken, in part, because he had not located the river's gradient boundary, which was an essential component of an apportionment survey. As a result, the trial court found that an apportionment survey was unattainable and denied Johnson's motion.

After a three day jury trial, a jury issued a verdict in the Johnson's favor on his adverse possession claim regarding two triangular-shaped tracts that were a part of the

_____

[10] At a motion hearing on October 4, 2010, Johnson's counsel agreed with the trial court that it was "fair" to say "that if required to put Mr. Rivers on the stand, I would require him to go out to re-establish that point---find that point on the ground he did not establish." Regarding the calculations made by Rivers based on meander calls, Johnson's counsel went on to state that "[a] meander call is not the boundary of the river and about that there is no dispute. The only thing a meander call does is provide calculations to compute the acreage, the required acreage . . . . [T]hey don't have anything to do with the boundary of the river."

disputed property.[11]  The jury also determined the Elliotts were entitled to $8,947.93 in damages and $125,000 "for the necessary services of [the Elliotts'] attorney in this case" as well as an additional $15,000 per appeal to this Court and the Texas Supreme Court.  Thereafter, the trial court issued its *Final Judgment* confirming its prior summary judgment rulings and the jury's verdict, with the exception that the Elliotts' damages were reduced to $8,739.85.  This appeal followed.

### ISSUE NO. 1—THE ELLIOTTS' FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT

The trial court granted the Elliotts' first motion for partial summary judgment finding they had established, as a matter of law, a chain of title to the entirety of Section 14, from the sovereignty of the soil to the present.  Johnson does not contest the trial court's finding but asserts the Elliotts' failed to address issues related to accretion and an apportionment survey.[12]  In doing so, Johnson does not contest the Elliotts' title to Section 14.  In actuality, what Johnson contests is the location of the boundary line between Sections 13 and 14.

We review summary judgments *de novo*.  *Ferguson v. Bldg. Materials Corp. of America*, 295 S.W.3d 642, 644 (Tex. 2009) (*per curiam*).  Summary judgment is appropriate if the movant establishes there is no genuine issue of material fact and judgment should be granted as a matter of law.  TEX. R. CIV. P. 166a(c); *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2003).  We consider the

---

[11] *See footnote 1, supra.*  As previously noted, the Elliotts did not appeal this verdict.

[12] Johnson also asserts the Elliotts' failed to authenticate a summary judgment exhibit.  He waived this issue on appeal by failing to urge a timely objection in the trial court.  TEX. R. APP. P. 33.1(a); *St. Paul's Surplus Lines, Co. v. Dal-Worth Tank Co.,* 974 S.W.2d 51, 53 (Tex. 1998).  Neither does Johnson cite to the record nor any legal authority in support thereof.  *See Town of Flower Mound, Tex. v. Teague,* 111 S.W.3d 742, 762 (Tex. App.—Fort Worth 2003, pet. denied).

summary judgment record in the light most favorable to the nonmovant while indulging every reasonable inference and resolving any doubts against the nonmovant. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). We must affirm summary judgment if any of the movant's theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott,* 28 S.W.3d 211, 216 (Tex. 2003).

Boundary disputes may be tried by the statutory cause of action of trespass to try title. TEX. PROP. CODE ANN. § 22.001(a) (West 2000); *Plumb v. Stuessy,* 617 S.W.2d 667, 669 (Tex. 1981). Ordinarily, a plaintiff may recover by proving (1) a regular chain of conveyances from the sovereign, (2) a superior title out of a common source; (3) title by limitations, or (4) prior possession and that the possession has not been abandoned. *Ramsey v. Grizzle*, 313 S.W.3d 498, 505 (Tex. App.—Texarkana 2010, no pet.) (citing *Rogers v. Ricane Enterprises, Inc.*, 884 S.W.2d 763, 768 (Tex. 1994)). Placing into evidence a recorded deed showing a plaintiff's interest in the disputed property has been held sufficient to establish a present legal right to possession in a boundary case. *Brownlee v. Sexton*, 703 S.W.2d 797, 800 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (citing *Plumb*, 617 S.W.2d at 669).

Having established record title to Section 14 as a matter of law, the status of the Elliotts' property ownership continued in the absence of summary judgment evidence to the contrary. *Hutson v. Tri-county Properties, LLC,* 240 S.W.3d 484, 490 (Tex. App.—Fort Worth 2007, pet. denied). The Elliotts did not have the burden to show the absence of accretion affecting the boundary line between Sections 13 and 14. Rather, Johnson bore the burden of proof as to whether the Red River, the northern border of

both Sections 13 and 14, had moved or shifted, thereby somehow affecting the location of the north-south boundary line between the two surveys. *Brownlee*, 703 S.W.2d at 801. The Elliotts had no burden to "prove that [they] had not parted with [their] title." *Id.* at 800.

Furthermore, because the trial court's order specifically stated that it was "subject to" Johnson's claim that the disputed property was not a part of Section 14, the trial court's order granting the Elliotts' first motion for partial summary judgment did not determine the issue about which Johnson complains, to-wit: the location of the boundary line between Sections 13 and 14. Accordingly, Johnson's first issue is overruled.

### ISSUE NO. 2—THE ELLIOTTS' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

The trial court also granted the Elliotts' second motion for partial summary judgment finding they had established, as a matter of law, title to the disputed property, save and except two triangular-shaped tracts consisting of approximately 5.32 acres and 145.4 square feet. In doing so, the trial court implicitly determined, as a matter of law, the north-south boundary line between Sections 13 and 14 to be the call of the original patent, extended northward to the south bank of the Red River. Stated differently, the trial court found, as a matter of law, that the equitable apportionment of river frontage contemplated by the Supreme Court's decision in *Sharp v. Womack* was not implicated by the facts of this case. We agree.

To defeat the Elliotts' second partial summary judgment motion, Johnson was required to come forward with evidence creating a genuine issue of material fact that the disputed 234 acre tract became a part of Johnson's Section 13 through the process of accretion along the Red River. *See* TEX. R. CIV. P. 166a(i). Thus, Johnson needed more than a scintilla of evidence supporting this proposition, *see Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 598 (Tex. 2004), i.e., evidence transcending mere surmise or suspicion. *Id.* at 601. Johnson asserts the Elliotts' own surveyors raised a fact issue regarding accretion by stating in their survey that "[s]low movement of the Red River northward accounts for accretion acres in this survey as compared to the 1910 location of the river." In that regard, the Elliotts's summary judgment evidence also indicates their surveyors testified on deposition that this phrase was a stock phrase used in all surveys along the Red River and that their surveys did not identify or demarcate any specific, accreted property in Section 14, nor did they propose to establish the original river bank of the Red River as it existed in 1890 when the property was patented. Because the surveyors' statements are conclusory and create at most a mere suspicion that there might have been some accretion in the area of Section 14, Johnson's contention fails because there was no material issue of fact concerning whether there was actual accretion. Furthermore, even assuming the existence of accreted property, Johnson offers no evidence whatsoever of a disproportionate apportionment of river frontage. Without the establishment of an original river bank, the existence of an apportionable accretion was not established; without the establishment of an apportionable accretion, there could be no equitable apportionment of river frontage;

12

and without equitable apportionment of river frontage, there could be no deviation of the north-south boundary line between Sections 13 and 14; and without a deviation of the north-south boundary line, the disputed property lies within Section 14.

JOHNSON'S POSITION FAILS AS A MATTER OF LAW

When patented by the State of Texas, Sections 13 and 14 were riparian tracts with the south bank of the Red River as their northern boundary line. As such, the north-south boundary line between the tracts was established by the call of the original patent as extended northward to the south bank of the Red River. Therefore, unless otherwise contradicted, the disputed tract was located in Section 14.

In dicta contained in the first *Sharp v. Womack* opinion, the Texas Supreme Court stated that accretions to riparian lands should be equitably apportioned to the owners of adjoining lands in proportion to the "entire river front as it was when the lots were laid out."[13] *Sharp*, 127 Tex. at 364, 93 S.W.3d at 716. Relying on that dictum, Johnson maintains that the application of the equitable apportionment theory dictates that the north-south boundary line between Sections 13 and 14 deviate to the east, from the intersection of that boundary line and the original river bank to the current bank of the Red River, thereby placing the disputed property in Section 13. Because Johnson sought to establish a deviation of the north-south boundary line based upon this equitable theory, it was his burden to contradict the boundary line otherwise established

_____

[13] It should be noted that the Texas Supreme Court issued a second *Sharp v. Womack* opinion, appearing at 132 Tex. 507, 125 S.W.2d 270 (Tex. 1939). Although this second appeal was technically disposed of as a dismissal for want of jurisdiction, the Supreme Court "thought [it] appropriate to briefly comment upon the former opinion, with a view of enabling the lower court to correctly terminate this complicated litigation, if possible." 132 Tex. at 508, 125 S.W.2d at 271. Although referencing the "method set forth in the former opinion," the second opinion did not restate the theory or methodology of apportionment.

by the Elliotts. When Johnson failed to establish the location of the river bank at the time of the original patent, he failed to establish the existence of an apportionable accretion. More importantly, he also failed to establish the applicability of a legal theory that would call for the deviation of the boundary line between Sections 13 and 14. Accordingly, Johnson's second issue is overruled.

### ISSUE NO. 3—JOHNSON'S MOTION FOR SUMMARY JUDGMENT

The trial court denied Johnson's motion for summary judgment because it was not supported by any summary judgment evidence. The sole evidence in support of Johnson's motion for summary judgment was the Rivers Survey and his supporting affidavit. Both of those pieces of evidence were stricken by the trial court as unreliable. Johnson asserts his summary judgment evidence was reliable and, in the absence of a method to identify the gradient boundary of the Red River in 1890, the Rivers Survey should have been admitted as "substantially" correct or as the "best evidence."

We review a trial court's decision to exclude testimony under an abuse of discretion standard. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004). We must uphold an evidentiary ruling if there is any legitimate basis for it. *Owens-Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

Here, the Elliotts' evidence indicated Rivers's affidavit and survey were unreliable because the survey upon which his opinions were based was contrary to reasonable

14

survey standards.  In addition, Johnson did not contest the Elliotts' efforts to discredit Rivers or even attempt to rehabilitate him.  Instead, Johnson's counsel referred to Rivers as a "discredited expert" who "admit[ted] that he failed to comply with reasonable survey standards."  Under these circumstances, we cannot say the trial court abused its discretion in striking Rivers's affidavit and survey as being unreliable.

Further, inadmissible evidence, such as Rivers's affidavit and survey, cannot be used in the summary judgment proceedings to prove Johnson's proposition was "substantially correct."  *See* Tex. R. Civ. P. 166a(f).  *See also United Blood Services v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997) (*per curiam*) ("[N]o difference obtains between the standards for evidence that would be admissible in a summary judgment proceeding and those applicable at a regular trial.").  Because Johnson's motion for summary judgment was unsupported by any reliable summary judgment evidence, the trial court did not err in denying that motion.  Johnson's third issue is overruled.

### ISSUE NO. 4—MOTION FOR CONTINUANCE AND EXPERT DESIGNATION

Johnson contends the trial court abused its discretion by failing to grant his motion to continue the submission of the Elliotts' second motion for partial summary judgment in order to grant the out-of-time designation of two new survey experts, Dennis Probst and Steve Gibson.  Johnson further contends the trial court erred in failing to permit the new surveyors to complete an admissible apportionment survey.

A trial court's order denying a continuance of a summary judgment hearing will not be disturbed absent a clear abuse of discretion.  *See Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 161 (Tex. 2004).  The motion must describe the evidence

sought, explain its materiality and show the party requesting the continuance used due diligence to obtain the requested discovery. TEX. R. CIV. P. 166a(g). *See Wal-mart Stores Tex., L.P. v. Crosby*, 295 S.W.3d 346, 356 (Tex. App.—Dallas 2009, pet. denied). Conclusory allegations of diligence are not sufficient, *Landers v. State Farm Lloyds*, 257 S.W.3d 740, 747 (Tex. App.—Houston [1st Dist.] 2008, no pet.), and, if the motion does not allege facts showing diligence in attempting to procure the testimony, the denial of the motion is proper. *See Wal-mart*, 295 S.W.3d at 356; *J.C. Penny Co. v. Duran*, 479 S.W.2d 374, 380-81 (Tex. Civ. App.—San Antonio 1972, writ ref'd n.r.e.). "A party who fails to diligently use the rules of discovery is not entitled to a continuance." *Landers*, 257 S.W.3d at 747 (citing *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex. 1988)).

In October 2009, the trial court entered its *Second Order Compelling Response to Written Discovery* requiring Johnson to disclose "any testifying expert concerning Defendant's claims relating to accretion, relevant surveys and locations of relevant boundaries" within ten days. Johnson's motion for continuance does not describe any diligent attempt to secure expert testimony from Probst or Gibson during the nine months following the trial court's October 2009 order or since March 2010, when the Elliotts deposed Rivers regarding his apportionment survey and established errors in his calculations and methodology. Under these circumstances, we are unwilling to find the trial court abused its discretion by refusing to grant Johnson's motion for continuance.

*See Landers*, 257 S.W.3d at 747 (no abuse of discretion where neither motion nor affidavit described movant's diligence to secure additional discovery).[14]

Johnson also sought to designate Probst and Gibson nine months after being ordered to do so and only weeks before the scheduled hearing on the Elliotts' second motion for partial summary judgment. A trial court's exclusion of an expert witness that has not been properly designated must be reviewed under an abuse of discretion standard. *Mentis v. Barnard*, 870 S.W.2d 14, 16 (Tex. 1994). If the trial court erred in excluding the witness, the error is reversible if it is both controlling on a material issue and not cumulative. *Id.* Under the facts of this case, we find the trial court did not abuse its discretion by excluding any summary judgment evidence offered by Probst and Gibson. Accordingly, Johnson's fourth issue is overruled.

### ISSUE NO. 5—JOHNSON'S MOTION FOR A COURT-APPOINTED SURVEYOR

Johnson asserts the trial court erred by denying his motion requesting the trial court to appoint a surveyor. Rule 796 of the Texas Rules of Civil Procedure permits a trial court to appoint a surveyor at its discretion. Rule 797 states, however, that "[w]here there is no dispute as to the lines or boundaries of the land in controversy, *or where the defendant admits that he is in possession of the lands or tenements included in the plaintiff's claim, or title, an order to survey shall be unnecessary.*" Tex. R. Civ. P. 797. Because Johnson affirmatively averred in his amended answers that he was in

---

[14] Johnson contends on appeal that the trial court erred by not allowing him to supplement his discovery with the two new experts under Texas Rule of Civil Procedure 193.6(a). This contention was not made before the trial court and, as such, was waived on appeal. *See* TEX. R. APP. P. 33.1(a). If an argument is presented for the first time on appeal, it is waived. *Id. See Marine Transport Co. v. Methodist Hosp.*, 221 S.W.3d 138, 147 n.3 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

possession of the disputed 234 acres, we cannot say the trial court abused its discretion by denying his motion to appoint a surveyor.  Johnson's fifth issue is overruled.

### ISSUE NO. 6—JOHNSON'S MOTION FOR JUDGMENT *NON OBSTANTE VEREDICTO*

Johnson next asserts the trial court erred in denying his motion for judgment *non obstante veredicto* seeking to set aside the jury's verdict as to Elliotts' damages and attorney's fees, again based on the theory the Elliotts did not establish title to the disputed 234 acres by an apportionment survey.

As stated earlier, having established record title from the sovereignty of the soil, the Elliotts' evidence of title was sufficient to establish a present legal right to possession of the disputed 234 acres.  *Brownlee*, 703 S.W.2d at 800 (citing *Plumb*, 617 S.W.2d at 669).  *See also Ramsey,* 313 S.W.3d at 273.  Johnson bore the burden of proof on whether the Red River, the northern border of both properties or the common north-south boundary line between Sections 13 and 14 had moved or shifted. *Brownlee*, 703 S.W.2d at 801.  Because the Elliotts were not required to establish title by an apportionment survey, Johnson's sixth issue is overruled.

### ISSUE NO. 7—JOHNSON'S MOTION FOR REMITTITUR

Johnson finally asserts the Elliotts' legal fees should be limited to the fees required to prevail on their first and second partial summary judgment motions because the remainder of their time was necessary for their handling of the jury trial in February 2012—a trial wherein Johnson prevailed on his adverse possession claim regarding the two triangular-shaped tracts out of the disputed 234 acre tract. This contention

overlooks the fact that the Elliotts were required to defend against many of the issues raised in Johnson's motion for summary judgment and his responses to the Elliotts' motions for partial summary judgment during pretrial proceedings and the trial. Moreover, after the Elliotts offered evidence of their attorney's fees at trial, the jury reduced their total fees by nearly $35,000.

That said, Johnson essentially contends the Elliotts were required to segregate fees between those incurred on their motions for partial summary judgment and the trial. Importantly, the relevant jury question did not require segregation of the fees. Instead, the question inquired generally about a "reasonable" fee for "necessary services in this case" for "preparation and trial" with no limitation on the specified "services" and no instruction regarding segregation. Because Johnson did not object at trial to the lack of testimony regarding segregation of services or the lack of any requirement in the jury charge that attorney's fees be segregated, he waived his appellate contention that the Elliotts were required to segregate fees. *See Green International, Inc. v. Solis,* 951 S.W.2d 384, 389-90 (Tex. 1997). *See also Fire Insurance Exchange v. Kennedy,* No. 02-11-00437-CV, 2013 Tex. App. LEXIS 955, at *17 (Tex. App.—Fort Worth Jan. 31, 2013, pet. denied) (mem. op.) (collected cases cited therein).

Johnson attempts to avoid the consequence of failing to object by characterizing his complaint as a challenge to sufficiency of the evidence supporting the amount of attorney's fees awarded. We measure sufficiency of the evidence, however, against the jury question as submitted. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000). Having examined the record in light of the jury question that did not require segregation,

19

the evidence is sufficient to support the jury's finding regarding the amount of reasonable and necessary fees.  Johnson's seventh issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


Patrick A. Pirtle
Justice